IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1884.

---

### MEEHAN v. STATE.

1. To constitute the crime of voluntary escape, the act must be done, not through mistake or ignorance, but *malo animo.*
2. If a jailer procures the discharge of a person in his custody, from the justice who has committed him, under a conviction, and discharges such prisoner under it in good faith, believing it to be legal, such jailer is not guilty of a voluntary escape, his crime being that of negligent escape.

---

On error to the Hudson Oyer and Terminer.

Argued at June Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and REED.

For the plaintiff in error, *Vredenburgh & Garretson.*

For the state, *C. H. Winfield.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The plaintiff in error was the keeper and warden of the county penitentiary and Hudson

county jail, and has been indicted and convicted for voluntarily permitting a prisoner in his custody to go at large and escape from such confinement. The indictment charges a voluntary escape, and the principal question arising on the bills of exceptions taken at the trial is as to the correctness of the judge's charge, in its application to the facts in evidence, on that subject. The prisoner alluded to had been convicted before a police justice of being a disorderly person, and had been sentenced and committed to imprisonment for a term of sixty days, and before the expiration of that period, the defendant, at the instance of the culprit, procured his written discharge from the committing magistrate, and thereupon suffered him to go at large. Upon the point in question, the trial judge, in his charge, stated the law in these words, viz. :

" The defendant says he found the discharge in the office, and believed it to be lawful, and it is argued that he discharged the prisoner, as he believed in good faith he was in duty bound to do, without any intent other than an intent to perform his duty. If this be so, under this indictment, he is not guilty, because the intent to give Holmes his liberty, to enable him to escape further punishment, is wanting. Under such circumstances, he would be guilty of a negligent escape."

And in subsequently alluding to the circumstance that the defendant had assisted in procuring the illegal discharge, he says, among other things, as follows :

"A jailer designing to end the punishment of a prisoner lawfully committed to his custody, who procures his discharge or causes such discharge to be procured, must take care that discharge is lawful, or he will be guilty of a voluntary escape. Where he undertakes to terminate such an imprisonment, the term having not expired, he must take the chance that the discharge he procures is lawful, and he is guilty of a voluntary escape if it be not lawful. Where he acts affirmatively, he cannot excuse himself by saying that he was ignorant of the law."

The first proposition stated in these instructions, to the effect that the defendant was not guilty of the crime charged,

unless he knowingly and with intent to assist the prisoner in escaping further punishment, was correct, although doubts have been sometimes expressed by legal writers on the subject. But I think both reason and authority are in favor of the principle as laid down. We can scarcely believe that the custodians of convicts could, under the system of the common law, have been held to a greater responsibility. By force of that system, a jailer being guilty of a voluntary escape of a felon, became himself a felon, a rigor that has been transported into our own statute-book, in the provision that prescribes that if any jailer, &c., having in his custody any offender guilty of treason, murder or other crime punishable with death, shall voluntarily permit or suffer such offender to escape, he shall be adjudged guilty of a high misdemeanor, and, on conviction, shall suffer death. It is quite incredible that it was, at any time, the law that such a consequence as this was to follow an escape that had not been permitted *malo animo*, and, as I have said, the authorities do not countenance such an idea. Thus, from the *Year Book, vol. XXV.*, (3d *ed.*) *p.* 39, we have the case of a justice of the peace bailing a person not bailable by law, and it was held that the jailer discharging the prisoner by force of such an illegal and nugatory procedure was not guilty of felony, but was liable only for a negligent escape. And Lord Hale (*vol. I., p.* 598,) says that a sheriff, &c., bailing one that is not by law bailable, it is not, in him, a voluntary escape, at least unless done by design, to deliver the prisoner forever, but it is a negligent escape, punishable at common law. It will not escape notice that it was a mistake as to the law, innocently fallen into by the officer, which was considered so to mollify the offence as to convert what otherwise would have been a very high crime, into a mere misdemeanor.

In view of the authorities thus referred to, and the characteristics of the official misconduct in question, it was to have been expected that so accurate a writer as Mr. Serjeant Hawkins should have stated the law, in this particular, in these words, viz.: "There can be no doubt but that, wherever

an officer who hath the custody of a prisoner charged with, and guilty of, a capital offence, doth knowingly give him his liberty, with an *intent to save him either from his trial or execution*, he is guilty of a voluntary escape, and thereby involved in the guilt of the same crime of which the prisoner was guilty and stood charged with." 3 *Hawk. P. C.* 254. Mr. Bishop similarly defines the offence. 2 *Bish. Cr. L.*, § 920. And in the work of Mr. Russell we find the definition of Hawkins adopted without any modification.

It is clear, therefore, that in order to constitute the crime of voluntary escape, the act must be done by the officer *malo animo*, and that if he discharge the prisoner through an erroneous interpretation of the law, he is not guilty of that crime, but of the lesser offence of negligent escape. It is a crime in which the intention to do a wrong is one of the fundamental and essential ingredients. As has already been remarked, the charge of the judge, on this head, was legally correct.

But I cannot agree to the exception to this principle which he introduced into his charge. That exception was that, if the jailer helped to procure the discharge in question from the police justice, and, although such act was done in a *bona fide* belief that the justice had the legal right to make such discharge, in such event the defendant was guilty of the crime for which he was indicted. There seems to be no ground for such a construction of the law as this. If the officer had a *bona fide* belief in the power of the justice to discharge the prisoner, he did not act *malo animo*, either in the procurement of such discharge or in acting under it. It may be that it is not a commendable practice for jailers to participate, under ordinary circumstances, in applications for the release of persons in their custody, but I do not know of any law that prohibits such conduct. At all events, if the discharge so procured turns out to be illegal, its procurement by the officer acting under it does not, *per se*, and, as a matter of law, irrespectively of the realities of the case, raise up an intendment that such officer had a guilty knowledge that he was acting criminally. The criminal mind was no more shown to be

present, in suffering this prisoner to escape, from the mere circumstance that the justice's order had been obtained through the instrumentality of the defendant, than if such order had been procured by a stranger.

In this respect, the instructions of the judge to the jury were incorrect.

The exceptions taken to the indictment have been examined, but none of them have appeared to be well founded.

For the error above stated, the judgment must be reversed.